UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MELINDA M. CAMPBELL,

                        Plaintiff,

        v.

CAROLYN W. COLVIN, Commissioner of
 Social Security,

                        Defendant.

_____

**REPORT
and
RECOMMENDATION**

**13-CV-00775A(F)**

APPEARANCES:         LAW OFFICES OF WILLIAM C. BERNHARDI
                           Attorneys for Plaintiff
                           SARAH A. FREDERICK, Of Counsel
                           950-A Union Road,  Suite 240
                           West Seneca, New York 14224

                           WILLIAM J. HOCHUL, JR.
                           UNITED STATES ATTORNEY
                           Attorney for Defendant
                           MARY PAT FLEMING
                           Special Assistant United States Attorney, of Counsel
                           Federal Centre
                           138 Delaware Avenue
                           Buffalo, New York 14202, and

                           DAVID B. MYERS
                           Assistant Regional Counsel
                           United States Social Security Administration
                           Office of the General Counsel, of Counsel
                           26 Federal Plaza, Room 3904
                           New York, New York 10278

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on October 29, 2014.  (Doc. No. 14).  The matter is presently before the court on Plaintiff's motion for judgment on the pleadings or alternatively, for remand for further development of the record filed on December 31, 2013 (Doc. No. 10), and Defendant's motion for judgment on the pleadings filed on February 24, 2014.  (Doc. No. 12).

## BACKGROUND

Plaintiff Melinda Marie Campbell ("Plaintiff" or "Campbell"), seeks review of Defendant's decision denying her Social Security Disability Insurance benefits under ("SSDI") under Title II of the Act.  In denying Plaintiff's application for disability benefits, Defendant determined that Plaintiff had the severe impairment of lumbar disc disease, but did not have an impairment or combination of impairments within the Act's definition of impairment.  (R. 27).[1]  Defendant determined that even if Plaintiff's medically determinable impairments could reasonably be expected to produce Plaintiff's alleged symptoms, their persistence and limiting effects as alleged by Plaintiff were not credible. (R. 29).  The ALJ further determined that Plaintiff meets the insured status requirements through June 30, 2011 (R. 25), and that Plaintiff was able to perform sedentary work (R. 28), and Plaintiff's past relevant work as a secretary and a collector.  (R. 31).  The ALJ found Plaintiff not disabled, as defined in the Act, at any time from the alleged onset

---

[1] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

date of January 30, 2006, through the date of the Administrative Law Judge's decision on April 10, 2012.  (R. 25).

## PROCEDURAL HISTORY

On April 21, 2010, Plaintiff filed an application for supplemental insurance benefits under Title II of the Act alleging disability based on a lumbar impairment as of January 30, 2006.  (R. 227-35, 250).  Plaintiff's application was initially denied by Defendant on July 22, 2010 (R. 117), and pursuant to Plaintiff's request filed on August 17, 2010 (R. 141-43), a hearing was held before Administrative Law Judge Michael Lissek ("Lissek" or "the ALJ") on February 28, 2012, in Newark, New Jersey.  (R. 39-116).  Plaintiff, represented by Lynn M. Kwon-Dzikiy, Esq., ("Kwon-Dzikiy"), appeared via video conference pursuant to 20 C.F.R. § 404.936(c), in Buffalo, New York, to testify at the hearing.  *Id.*  The ALJ's decision denying the claim was rendered on April 10, 2012.  (R. 25-32).

On April 26, 2012, Plaintiff requested review of the ALJ's decision by the Appeals Council.  (R. 18-21).  The ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on June 4, 2013.  (R. 1-7).  This action followed on July 23, 2013, with Plaintiff alleging the ALJ erred by failing to find her disabled.  (Doc. No. 1).

Defendant filed an answer on October 21, 2013.  (Doc. No. 7).  On December 31, 2013, Plaintiff filed a motion for judgment on the pleadings and alternatively, remand of the matter for further development of the record ("Plaintiff's motion"), accompanied by a supporting memorandum of law (Doc. No. 12) ("Plaintiff's Memorandum").  On February

3

24, 2014, Defendant filed a cross motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Doc. No. 12) ("Defendant's Memorandum"). Plaintiff filed a reply/response ("Plaintiff's Reply") to Defendant's motion for judgment on the pleadings on March 31, 2014 (Doc. No. 13). Oral argument was deemed unnecessary.

Based on the following, Defendant's motion should be DENIED; Plaintiff's motion should be GRANTED as to Plaintiff's request for remand for further clarification, and alternatively, DENIED as to Plaintiff's request for remand for calculation of benefits consistent with this Report and Recommendation.

## **FACTS**[1]

Relevant to the period of disability for review in this case, on June 2, 2006, Plaintiff, born on March 4, 1981, visited John Pollina, Jr. ("Dr. Pollina"), for a neurosurgical consultation after being injured at work. Upon examination, Dr. Pollina assessed Plaintiff with limited range of motion ("ROM") of the lumbar spine, normal muscle tone, strength, reflexes and sensation, and evaluated Plaintiff with a positive straight leg raising[2] ("SLR") test result on Plaintiff's right side. (R. 325-26). Dr. Pollina diagnosed Plaintiff with lower back pain and lumbar radiculopathy, and requested a

---

[1] Taken from the pleadings and the administrative record.

[2] The straight leg raise test ("SLR") is used to detect nerve root pressure, tension or irritation. A positive SLR requires the reproduction of pain at an elevation of less than 60 degrees and is conducted with the patient in either a seated or supine position, and SLR is said to be the most important indication of nerve root pressure.

worker's compensation authorization for a magnetic resonance imaging ("MRI") scan.
*Id.*

On August 21, 2006, Dr. Pollina completed a neurosurgical re-evaluation on Plaintiff, and assessed Plaintiff with a slightly slowed and deliberate gait, normal coordination, slightly limited ROM, intact muscle tone, strength and reflexes, and reviewed the MRI of Plaintiff's lumbar spine conducted on July 18, 2006 (R. 330), that showed normal results, and opined that no neurosurgical intervention would be necessary to treat Plaintiff's back impairment.  (R. 329).  Plaintiff measured 5 feet tall and weighed 175 pounds at the time of the evaluation.

On September 7, 2006, Plaintiff sought treatment from Ashraf Henry, M.D. ("Dr. Henry"), a pain specialist, who noted that Plaintiff was obese, diagnosed Plaintiff with right sacroiliac joint pain, and prescribed a Lidoderm pain treatment patch for Plaintiff. (R. 331-32).

On March 29, 2007, Plaintiff underwent an MRI scan, where Randall J. Loftus, M.D. ("Dr. Loftus"), evaluated the results and opined that the MRI revealed straightening of Plaintiff's lumbar lordosis, a mild broad-based central disc protrusion measuring 2 millimeters that mildly impinged Plaintiff's thecal sac at Plaintiff's L4-L5 disc segments, [3] and a mild disc protrusion that measured 2 millimeters at Plaintiff's L5-S1 disc segment that minimally impinged Plaintiff's anterior thecal sac.  (R. 335).

---

[3] The lumbar spine is located in the area of an individual's lower back, and is comprised of five disc segments numbered L1 through L5, the sacrum bone, and coccyx (tailbone).

On May 1, 2007, Cameron Huckell, M.D. ("Dr. Huckell"), completed a consultative physical examination on Plaintiff, and assessed Plaintiff with a body mass index ("BMI")[4] of 36.1, almost normal ROM, intact sensation, strength and reflexes, and a positive SLR test conducted in the supine position on Plaintiff's right side that measured 55. (R. 346). Dr. Huckell opined that Plaintiff's pathology may have significantly worsened over the previous six months, recommended that Plaintiff undergo a lumbar MRI scan, and tentatively diagnosed Plaintiff with herniated disc of Plaintiff's lumbar spine without myelopathy (neurological deficit), and lumbar radiculitis (inflammation of the nerve root). (R. 346).

Plaintiff returned to Dr. Huckell on July 17, 2007, reporting severe back pain, where, upon examination, Dr. Huckell assessed Plaintiff with a normal gait, 80 percent of normal ROM, strength, sensation, and bilateral reflexes, and diagnosed Plaintiff with herniated disc without radiculopathy, and lumbar radiculitis. (R. 353-54).

On August 16, 2007, Dr. Huckell completed a physical examination on Plaintiff, and assessed Plaintiff with a normal gait, 30 degree lumbar ROM upon flexion, 20 degree ROM upon extension, a positive SLR test conducted in the supine position on Plaintiff's right side measured at 5 degrees, and normal strength, sensation, and

---

[4] BMI is the established medical criteria for obesity, which is the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m2). *See* Social Security Ruling ("SSR") 02-1p, 2002 WL 34686281, at *2 (S.S.A. Sept. 12, 2002). A person with a BMI of 25-29.9 is considered overweight. A person with a BMI above 30.0 is considered obese. *See* http://www.cdc.gov/healthyweight/assessingbmi/adult_bmi/index/index.htm.html#Interpreted, *last visited* July 28, 2016.

reflexes.  (R. 356).  Plaintiff agreed to undergo intradiscal electrothermal annuloplasty ("IDET")[5] treatment to Plaintiff's L4-L5 and L5-S1 disc segments.

During an IDET post-operative examination on October 2, 2007, Dr. Huckell noted that Plaintiff reported unchanged pain that radiated to Plaintiff's right foot.  (R. 359).  Dr. Huckell opined that Plaintiff should increase her activity as tolerated, and evaluated Plaintiff with lumbar ROM of 30 to 60 degrees upon flexion, 20 to 35 degrees upon extension, 10 to 20 degrees upon right bending, left bending measured at 10 to 20 degrees, right rotation measured at 5 to 18 degrees on both sides, right lower extremity strength measured at 4 to 5 on a five-point scale, a positive leg raising test conducted in the supine position on Plaintiff's right side that measured 55, and slightly abnormal reflexes.  (R. 360-61).  During a follow-up examination with Dr. Huckell on November 1, 2007, Plaintiff reported continued pain, and Dr. Huckell opined that although he would typically recommend that Plaintiff undergo lumbar spinal fusion or artificial disc replacement, Plaintiff's young age (26), and multi-level disc involvement made it probable that the surgery would not provide long-term relief, that Plaintiff had reached maximum medical improvement, and that Plaintiff had a permanent partial disability of moderate to marked severity.  Dr. Huckell further opined that Plaintiff's permanent restrictions included no lifting of anything that weighed more than 35 pounds, and that Plaintiff should avoid bending, twisting, reaching, climbing and balancing, should not stand, sit, or walk for more than two hours at a time in an eight-hour workday, and that Plaintiff's workday should not exceed eight hours each day or more than 40 hours per

---

[5] IDET treatment consists of inserting a heated catheter into a person's disc segment for pain relief.

week.  (R. 365).  Dr. Huckell further opined that Plaintiff would have to learn to live with her chronic pain, and should undergo training for sedentary work.  (R. 363).

On April 2, 2008, Plaintiff visited Dr. Huckell and reported chronic to severe daily lumbar pain (R. 367), where Dr. Huckell conducted a SLR test on Plaintiff in the supine position that showed positive results on Plaintiff's right side at 55 degrees, reduced range of motion, and full strength.  (R. 368).

On April 11, 2008, Dr. Loftus reviewed a MRI scan of Plaintiff's lumbar spine taken the same day, and evaluated Plaintiff with straightening of Plaintiff's lumbar lordosis, central disc herniation at Plaintiff's L4-L5 disc segment with extrusion that measured 2 millimeters and significantly impinged on Plaintiff's thecal sac, and a central disc protrusion at Plaintiff's L5-S1 disc segment measuring 3 millimeters that mildly impinged on Plaintiff's thecal sac.  (R. 337).

On April 29, 2008, Plaintiff returned to Dr. Huckell and reported continued pain. Dr. Huckell noted that Plaintiff's MRI scan of April 11, 2008, revealed disc herniations with pressure on Plaintiff's nerve roots, and opined that Plaintiff was a good candidate for surgical intervention, as other more conservative treatment methods had failed to treat Plaintiff's back impairment.  (R. 370).

On August 25, 2008, Plaintiff underwent posterior body lateral transfacet nerve root decompression, discectomy and fusion surgery at Buffalo General Hospital in Buffalo, New York.  (R. 338, 340-41).  During a post-operative examination with Dr. Huckell, Plaintiff reported pain radiating down Plaintiff's right leg that was relieved by walking.  Dr. Huckell noted that Plaintiff exhibited a normal gait while using an assistive

walking device, and exhibited reduced lumbar ROM, full strength, and normal reflexes sensation, leading Dr. Huckell to recommend that Plaintiff increase her activity level as tolerated, and begin the use of a bone fusion stimulator.[6]  (R. 389).

On December 2, 2008, Plaintiff returned to Dr. Huckell and reported improved pain symptoms, where Dr. Huckell assessed Plaintiff with a negative SLR test in the seated position.  (R. 391).

On June 10, 2009, Plaintiff underwent electromyography ("EMG") and nerve conduction velocity tests on Plaintiff's right foot that Bernard Beaupin, M.D. ("Dr. Beaupin"), opined revealed mild chronic L4-L5 radiculopathy and spontaneous activity in Plaintiff's lower paraspinal muscles that were likely a result of surgery and ongoing nerve root irritation.  (R. 406-07).

On June 22, 2009, Plaintiff returned to Dr. Huckell and reported that her pain was reasonably resolved, but increased after walking or sitting and was accompanied by tingling and numbness.  (R. 410).  Dr. Huckell opined that Plaintiff should not sit, stand, or walk for more than two hours continuously, should not work more than eight hours each day, lift more than 8 pounds, and should avoid bending, twisting, reaching, balancing, stooping, and climbing.  (R. 413).

On October 20, 2009, Plaintiff returned to Dr. Huckell and reported numbness, tingling, and pain in Plaintiff's lower right extremity that extended to the left side of Plaintiff's foot.  (R. 415).

---

[6] A bone fusion simulator uses low-level pulses of electromagnetic energy to assist bone healing after a fracture or surgery.

On November 3, 2009, Plaintiff visited Dr. Huckell with complaints of unbearable pain in her big toes.  Dr. Huckell evaluated Plaintiff with decreased ROM, and opined that Plaintiff's most recent MRI scan revealed minimal scarring prominent at Plaintiff's L5-S1 disc segment, mild posterior disc bulging and facet arthropathy at Plaintiff's L3-L4 disc segment, and opined that Plaintiff exhibited L5 nerve root problems as a result of scarring.  (R. 423).  A return visit to Dr. Huckell on February 16, 2010, showed Plaintiff with unchanged symptoms.  (R. 428).

On May 18, 2010, Plaintiff returned to Dr. Huckell and reported residual back discomfort, tingling and numbness in her legs.  (R. 434).  Upon examination, Dr. Huckell noted that Plaintiff exhibited a normal gait with good balance and coordination, paravertebral muscle rigidity, reduced lumbar ROM, and opined that Plaintiff was able to perform full-time work that did not require standing, sitting or walking in excess of two hours at a time, lifting of items that weighed more than 10 pounds, or that required bending, twisting, reaching, balancing, stooping, or climbing.  (R. 436).

On August 11, 2010, Plaintiff visited Conrad Williams, M.D. ("Dr. Williams"), a pain specialist, where Salina Mayes, a nurse practitioner in Dr. Williams' office, evaluated Plaintiff with a normal gait, moderate midline spine tenderness, normal muscle tone, moderately limited ROM, and noted that Plaintiff was unable to perform a heel-toe walk.  (R. 465).

On August 17, 2010, Plaintiff returned to Dr. Huckell, and reported that her leg had given way two days prior.  (R. 453).  Dr. Huckell evaluated Plaintiff with paravertebral muscle rigidity, pain upon palpation, localized swelling of Plaintiff's left

foot, reduced lumbar ROM, reflexes measured 1+ at the knee and ankle, and intact sensation.  (R. 454).  During a return visit to Dr. Huckell on June 25, 2010, Plaintiff reported that she had fallen down stairs as a result of her leg giving from pain, and that she experienced burning pain in her right foot.  (R. 448).  Upon examination, Dr. Huckell evaluated Plaintiff with antalgic gait while using a walker, mild edema of the right foot, and tenderness to palpation of Plaintiff's fourth metatarsal (foot bone).  (R. 450).

On September 21, 2010, Plaintiff visited Dr. Williams and reported continued foot and back pain where Dr. Williams assessed Plaintiff with 80 percent temporary impairment.  (R. 461).   On October 27, 2010, Dr. Williams evaluated Plaintiff with midline tenderness of the spine, normal muscle tone, inability to walk heel to toe, and assessed Plaintiff with lumbago (lower back pain), radiculitis (spinal inflammation), foot sprain, and opined that Plaintiff had a 75 percent temporary impairment.  (R. 458-59).  A visit to Dr. Williams on January 3, 2011, showed similar results.  (R. 475-76).

On October 11, 2010, Plaintiff visited Dr. Huckell for continued right foot pain, where Dr. Huckell noted that Plaintiff was to begin physical therapy treatment for her foot.  (R. 470).  On October 25, 2010, Plaintiff underwent an MRI of Plaintiff's right foot that Krishnan Kartha, M.D. ("Dr. Kartha"), opined revealed a bone bruise to Plaintiff's lateral and distal cuboid (bone in the central foot).  (R. 469).

On February 8, 2011, Dr. Williams completed a physical examination on Plaintiff that showed Plaintiff unable to perform a bilateral heel-toe walk.  (R. 472).

On March 15, 2011, Dr. Williams evaluated Plaintiff for pain management, and noted that Plaintiff reported that the tramadol medication was not working to alleviate

her pain, that Plaintiff's pain radiated to Plaintiff's left foot with numbness and tingling, and that Plaintiff was more comfortable standing than sitting.  (R. 551).  Upon examination, Dr. Williams assessed Plaintiff with evidence of muscle spasm, and diagnosed Plaintiff with chronic disc disease with myelopathy and chronic low back pain, and opined that Plaintiff was totally disabled.  (R. 551).

Plaintiff returned to Dr. Huckell on March 21, 2011 (R. 480-84), April 26, 2011 (R. 550), April 26, 2011 (R. 486), and June 2, 2011 (R. 494), with pain symptoms.  On October 7, 2011, Dr. Huckell performed a re-exploratative laminectomy surgery of Plaintiff's L4-L5 and L5-S1 disc segments, and removed spinal instrumentation from Plaintiff's previous surgery.  (R. 553).  Dr. Huckell opined that Plaintiff's L5 and S1 nerve root sections were scarred to the ventral (frontal) aspect of Plaintiff's disc segments.  *Id.*

On October 11, 2011, Martin Fechner, M.D. ("Dr. Fechner"), a consultative medical examiner, completed an interrogatory physical impairment questionnaire on behalf of the Social Security Administration, and opined that Plaintiff's lumbar impairment did not meet the criteria for disability under any listed impairments.  (R. 531).  Dr. Fechner completed a medical source statement on Plaintiff's ability to perform work activities, and opined that Plaintiff was able to lift up to 10 pounds occasionally, sit for 1 hour and stretch for a few minutes, stand and walk for 30 minutes at a time, sit for up to six hours in an eight–hour workday, reach overhead occasionally, reach in other directions frequently, occasionally operate foot controls, never climb ladders or scaffolds, crawl or work around unprotected heights or vibrations, and was able to engage in activities of daily living.  (R. 533-39).

On October 21, 2011, Dr. Huckell completed a medical source statement to clarify Plaintiff's ability to work, noting that Plaintiff was not able to sustain any employment on a regular and continual basis, and opined that Plaintiff's back impairment that required Plaintiff to lie down for one to two hours each day prevented Plaintiff from engaging in full-time work, and that Plaintiff's impairment had existed since Plaintiff was injured at work on January 30, 2006. (R. 578).   A visit to Dr. Huckell on October 27, 2011, showed Plaintiff with right foot pain exacerbated by walking and standing.  Upon examination, Dr. Huckell assessed Plaintiff with a BMI of 37.4, antalgic gate, mild edema of the left foot, and evaluated Plaintiff with normal deep tendon reflexes.  (R. 468).

On November 29, 2011, Plaintiff returned to Dr. Huckell for a spinal evaluation where Dr. Huckell evaluated Plaintiff with paravertebral muscle rigidity, significant tenderness upon palpation of the sacroiliac joint, positive Faber's test (test used to evaluate rotation) on Plaintiff's right hip joint, and reduced lumbar ROM . (R. 558).  Dr. Huckell opined that Plaintiff should increase her activity within her pain tolerance, and that Plaintiff continued to have a marked, permanent disability and should avoid bending, stooping, reaching, and lifting greater than 20 pounds, should not engage in prolonged sitting, standing, or walking for more than two hours at a time without a break, and that Plaintiff's workday should not exceed more than eight hours.  (R. 559).

On January 12, 2012, Dr. Huckell noted that Plaintiff was on dialysis as a result of complications from Plaintiff's medication, and therefore was unable to take any pain

medication, and that Plaintiff reported back pain and paresthesis (sensation of tingling, tickling, pricking, or burning) of her feet.  (R. 565).

On February 2, 2012, Philip Rados, M.D. ("Dr. Rados"), a physician with Catholic Health Systems in Buffalo, New York, completed a physical examination on Plaintiff, noted that Plaintiff's BMI measured 42.4, and that Plaintiff continued to experience back pain and no longer required dialysis treatment.  (R. 572).

## DISCUSSION

### 1.      Disability Determination Under the Social Security Act

An individual is entitled to disability insurance benefits under the Social Security Act if the individual is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . ..  An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves that he or she is severely impaired and unable to perform any past relevant work, the burden shifts to the Commissioner to prove there is alternative employment in the national economy suitable to the claimant. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

A. **Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight. *Schisler  v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d). The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and

1383(c)(3).  "Congress has instructed . . . that the factual findings of the Secretary,[7] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits.  *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Absent impairment, the applicant is not eligible for disability benefits.  *Id.*  Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[8] 42 U.S.C. §§

---

[7] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

[8] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, at * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. 20 C.F.R. §§ 404.1520(g), 416.920(g). The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F.2d at 467.

In reviewing the administrative finding, the court must follow the five-step analysis and 20 C.F.R. § 416.935(a) ("§ 416.935(a)"), to determine if there was substantial evidence on which the Commissioner based the decision. 20 C.F.R. § 416.935(a); *Richardson*, 402 U.S. at 410.

**B.**   <u>**Substantial Gainful Activity**</u>

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" for pay or profit.  20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed.  20 C.F.R. § 404.1572(a).  Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574.  In this case, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 30, 2006, the date upon which Plaintiff alleged disability.  (R. 27).  Plaintiff does not contest this determination.

**C.**   <u>**Severe Physical or Mental Impairment**</u>

The second step of the analysis requires a determination whether a disability claimant has a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509 ("§ 404.1509"), and significantly limits the claimant's ability to do "basic work activities."  If no severe impairment is found, the claimant is deemed not disabled and the inquiry ends.  20 C.F.R. § 404.1420(a)(4)(ii).

The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of

judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b) ("§ 404.1521(b)"), 416.921(b).  The step two analysis may do nothing more than screen out *de minimus* claims,  *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), and a finding of a non-severe impairment should be made only where the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on the claimant's ability to work.  *See Rosario v. Apfel,* 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856)).

In this case, the ALJ determined Plaintiff had the severe impairment of lumbar disc disease.  (R. 27).  Plaintiff does not contest this determination.


**D. Listing of Impairments, Appendix 1**

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments").  If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled.  20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled").

In this case, the ALJ determined that Plaintiff did not meet the criteria for disability under 20 C.F.R. Pt. 404, Subpt. P. App. 1 § § 1.04A (nerve root compression) ("§ 1.04A") or 1.04C[9] (lumbar spinal stenosis resulting in pseudoclaudication) ("§ 1.04C") of the listed impairments.  (R. 28).  Plaintiff contends that substantial evidence supports that Plaintiff's back impairment meets the criteria for disability under § 1.04A ("§ 1.04A") (Disorders of the spine), and that Plaintiff is disabled.  Plaintiff's Memorandum at 22.  Plaintiff further contends the ALJ violated the treating physician rule, and the requirements set forth under 20 C.F.R. Pt. 404, Subpt. P. App. 1 § 1.00D, by failing to consider the entire record and the effects of Plaintiff's obesity as required under 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00Q (Effects of obesity).  Plaintiff's Memorandum at 24-27.  Defendant maintains that substantial evidence supports the ALJ's determination that Plaintiff is not disabled under § 1.04A of the listed impairments, as Plaintiff only intermittently exhibited sensory loss, strength degradation, muscle weakness, and positive straight leg raising test results, and that the ALJ's finding is supported by Dr. Fechner's consultative opinion.  Defendant's Memorandum at 21-22.

## § 1.04 Disorders of the spine

In order to be found disabled under § 1.04A, a disability claimant must provide evidence of a disorder of the spine (*i.e.,* herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis

---

[9] As Plaintiff does not contest the ALJ's finding under § 1.04C of the listed impairments, the undersigned does not review that portion of the ALJ's determination.

vertebral fracture), that result in compromise of a nerve root (including the cauda

equina) or the spinal cord, with

> A. Evidence of nerve root compression characterized by neuro-anatomic
> distribution of pain, limitation of motion of the spine, motor loss (atrophy with
> associated muscle weakness or muscle weakness) accompanied by sensory
> or reflex loss and, if there is involvement of the lower back, positive straight-
> leg raising test (sitting <u>and</u> supine)

20 C.F.R. Pt. 404, Subpt. P. App. 1 § 1.04A (underlining added).

Because abnormal medical findings may be intermittent, their presence over a period of

time must be established by a record of ongoing management and evaluation, and care

must be taken to ascertain that the reported examination findings are consistent with the

individual's daily activities.  20 C.F.R. Pt. 404, Subpt. P. App. 1 § 1.00D ("§ 1.00D").

   In this case, the ALJ's finding that that Plaintiff's lumbar impairment does not meet

the criteria for disability under § § 1.04A or 1.04C includes only the general statement:

> [t]here is insufficient evidence in the record to establish that the claimant meets
> or medically equals the requirements of any listed impairment, special attention
> was provided to the requirements of those listed below.

(R. 28).

   As Plaintiff maintains, Plaintiff's Memorandum at 25, ALJ's are required to

provide an explanation as to why a claimant's impairment(s) do not meet the criteria of a

relevant listed impairment(s), and discuss any conflicting evidence under step three of

the disability determination.  Additionally, 20 C.F.R. § 404.1520(b) ("§ 404.1520(b)"),

requires ALJ's to take certain steps in instances where medical evidence in the

claimant's record is internally inconsistent:

If any of the evidence in your case record, including any medical opinion(s), is inconsistent, we will weigh the relevant evidence and see whether we can determine whether you are disabled based on the evidence we have.

20 C.F.R. § 404.1520(b).

However, "[t]he absence of an express rationale for an ALJ's conclusions does not prevent [a court of review] from upholding them so long as we are 'able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that [the ALJ's] determination was supported by substantial evidence.'" *See Salmini v. Commissioner of Social Security*, 371 Fed. App'x 109, 112 (2d Cir. 2010) (quoting *Berry*, 675 F.2d at 469) (ALJ's failure to explain rejection of the listed impairments does not require remand where the court is able to look to other portions of the decision to find that the determination was supported by substantial evidence)).  In this case, substantial evidence in the record supports the ALJ's determination that Plaintiff's back impairment does not meet the criteria for disability under § 1.04A of the listed impairments.

In particular, although the record indicates that Plaintiff exhibited some of the symptoms required to establish disability under § 1.04A, as Plaintiff's MRI scans revealed nerve root compression (R. 336-37, 505), Plaintiff reported neuro-anatomic distribution of pain (R. 325, 331, 248, 359, 267, 410, 434, 448, 453), exhibited decreased ROM (R. 360, 368, 389, 397, 422, 435, 483, 503, 558), had positive SLR test results (R. 326, 349, 360, 371, 381), and symptoms of muscle weakness (R. 360, 364), reflex (R. 331, 346, 353, 365, 360), and motor loss (R. 457, 472), Plaintiff's back impairment does not meet the criteria for disability under § 1.04A, because the record fails to support the requisite criteria for positive SLR test results under § 1.04A, requiring

22

positive SLR test results in both sitting and supine positions, in order for Plaintiff to be deemed disabled.  Specifically, Plaintiff was evaluated with positive results on SLR tests conducted on May 3, 2007 (R. 349), October 2, 2007 (R. 360), April 2, 2008 (R. 368), April 29, 2008 (R. 371), and August 15, 2008 (R. 38), evaluations conducted while Plaintiff was in a supine position.  Plaintiff's SLR test conducted on June 20, 2006, makes no indication to whether Plaintiff was in a seated or supine position during the test (R. 326), and Plaintiff's SLR test on June 8, 2009, conducted while Plaintiff was in a seated position, showed negative results.  (R. 403).  As Plaintiff provides no evidence to support that Plaintiff had positive SLR test results while tested in a seated position, Plaintiff is unable to meet the criteria for disability under  § 1.04A, *see* Discussion, *supra*, at 20 (quoting 20 C.F.R. Pt. 404, Subpt. P. App. 1 § 1.04), and is not disabled. Plaintiff's motion should therefore be DENIED.

### E. "Residual Functional Capacity" to Perform Past Work

The fourth inquiry in the five-step analysis is whether the applicant has the "residual functional capacity" to perform past relevant work.  "Residual functional capacity" is defined as the capability to perform work comparable to the applicant's past substantial gainful activity.  *Cosme v. Bowen*, 1986 WL 12118, at *3 (S.D.N.Y. Oct. 21, 1986).

In this case, the ALJ determined Plaintiff was able to perform Plaintiff's past relevant work as a secretary and collector, but unable to perform Plaintiff's past relevant work as a nurse's aide, as such work required exertional requirements beyond Plaintiff's capacity.  (R. 31).

Plaintiff contends that the ALJ committed legal error at step four of the sequential evaluation because the ALJ failed to inquire whether the vocational expert's ("VE") testimony was consistent with jobs listed in the Dictionary of Occupational Titles ("DOT"), and that the codes the VE testified to as relevant to Plaintiff (203.582-064 and 253.382-014) are listed in the DOT.  Plaintiff further contends that the ALJ failed to consider the limiting effects of Plaintiff's back impairment in the hypotheticals the ALJ posited to the VE.  Plaintiff's Memorandum at 27-28.  Defendant maintains that the VE's testimony, although not required, was based on proper hypotheticals, and that the ALJ was not required to solicit testimony as to whether the VE's testimony was consistent with the DOT because the VE specified the exertional and vocational levels that related to each job position the VE testified was relevant to Plaintiff's ability to do work.  Defendant's Memorandum at 25-26.

During the supplemental hearing held on February 28, 2012, the VE testified in response to hypothetical questions posed by the ALJ.  (R. 81-85).  Plaintiff's counsel solicited testimony from the VE as to specific jobs that the Plaintiff was capable of performing listed in the DOT.  (R. 85-86).  To the question of Plaintiff's past relevant work, the following exchange took place between the ALJ and the VE:

> ALJ: Okay. Please describe the claimant's past relevant work, identifying each job, the exertional level of each job and the skill level of each job for the past 15 years. Be sure to distinguish between the exertional levels of the job as actually performed by the claimant and as customarily performed if there is a difference. .
> VE: The claimant is a younger individual, she has a high school education. And the jobs in the record that was provided - - that were provided to me were a cashier. That work was light and unskilled. There was an indication that she worked for a period of time as a secretary to the ROTC. That work was sedentary and semiskilled with an SVP of four. She did collection work. That work was also

sedentary and semi-skilled. And she worked as a nurse's assistant. That work was medium and semiskilled.

(R. 81-82).

The ALJ then posed hypotheticals to the VE that included a younger individual with a vocational profile of the claimant, able to lift up to 10 pounds and capable of sedentary work, able to sit for a total of six hours in an eight-hour workday and walk a total of two hours in an eight-hour day, reach overhead with either arm, and all directions frequently, occasionally operate foot controls with either foot, never climb ladders or scaffolds or crawl, work around unprotected heights or vibrations, occasionally climb stairs and ramps, balance, stoop, kneel and crouch, work around mechanical parts and operate machinery, and frequently work around humidity and wetness, dust, odors, fumes and pulmonary irritants, to which the VE opined the Plaintiff would be able to perform her past relevant jobs of collector and secretary.  (R. 82-83). The ALJ next posed the same hypothetical with the additional limitation of able to sit for only three hours in an eight-hour day because of pain, and able to stand and walk for a total of two hours, which the VE opined would result in Plaintiff not being able to perform Plaintiff's past relevant work.  (R. 84).  The third hypothetical posed by the ALJ to the VE included all of the limitations included in the first two hypotheticals, with the additional limitation of absent from work for more than 4 days each month to which the VE opined would result in Plaintiff not being able to perform Plaintiff's past relevant work.  (R. 84).

During the supplemental hearing, Plaintiff's counsel requested the VE to provide a corresponding DOT code for Plaintiff's past relevant work

> Ms. Kwon-Dzikiy: Thanks. Do you have DOT codes for the past relevant work that you cited?
> VE: For the secretary, the DOT code is 203.582-064.
> Ms. Kwon-Dzikiy: Okay.
> VE: For the collector, it's 253.382-014.

(R. 85).

In this case, the VE's testimony is not consistent with the codes listed in the DOT, as the codes that the VE testified were relevant to Plaintiff's past work are not listed in the DOT. Contrary to the VE's testimony that the DOT code that includes Plaintiff's past relevant work as a secretary is 203.582-064, and that Plaintiff's past collection work is represented by DOT code 253.382-014, the correct listed code in the DOT for those occupations are 203.582-066 (secretary), and 241.367-010 (collector).

Social Security Ruling ("SSR") 00-4p states:

> Occupational evidence provided by a [vocational expert] . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between [vocational expert] . . . evidence and the DOT, the adjudicator <u>must</u> elicit a reasonable explanation for the conflict before relying on [vocational expert] . . . evidence to support a determination or decision about whether the claimant is disabled.

SSR 00-4p 2000 WL 1898704, at *1 (2015 Dec. 4, 2000)(underlining added).

The ruling also imposes an affirmative duty on ALJ's to inquire, during hearings where a VE is present, if any inconsistencies exist between the VE's testimony and jobs listed in the DOT, and to adhere to two steps when soliciting a VE's testimony:

> 1. Ask the [VE] if the evidence he or she has provided conflicts with information provided in the DOT; and
> 2. If the [VE's] evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

*Id.*

In this case, however, the VE's improper assignment of DOT codes to Plaintiff's past relevant work constitutes harmless error.  It is clear from Plaintiff's counsel's examination of the VE that Plaintiff was familiar with the strength and skill requirements of Plaintiff's past work as a secretary and collector:

> VE: The claimant is a younger individual. She has a high school education. And the jobs in the record that was provided - - that were provided to me were cashier. That work was light and unskilled. There was an indication that she worked for a period of time as a secretary to the ROTC. That work was sedentary and semi-skilled with an SVP of four. She did collection work. That work was also sedentary and semi-skilled. And she worked as a nurse's assistant. That work was medium and semi-skilled.

(R. 82).

Accordingly, the VE's reference to incorrect DOT codes is a careless mistake, but does not result in a discrepancy requiring remand. *Jasinski v. Barnhart*, 341 F.3d 182, 185-186 (2d Cir. 2003) (remand not necessary where direct contradiction with the DOT existed, but did not result in discrepancy).  Plaintiff is correct that the ALJ was required to elicit testimony that no inconsistencies existed between the VE's testimony and the DOT, but Plaintiff's reliance on *Mimms. V. Heckler*, 750 F.2d 180, 184 (2d Cir. 1984) ("*Mimms*"), in support of such contention is misplaced.  *Mimms* did not create such a *per se* rule, rather, in *Mimms*, the ALJ's error lay in the discrepancy between the ALJ's finding that the claimant was capable of sedentary work and the VE's identification of jobs that required light work.  Such a discrepancy does not exist here, and Plaintiff's motion on this issue is therefore without merit.

Plaintiff further contends that the ALJ violated the treating physician's rule, and that the ALJ's decision to afford less weight to the opinion of Dr. Huckell, that

necessarily negated Dr. Huckell's opinion that Plaintiff was not capable of working on a regular and continuing basis, tainted the ALJ's residual functional capacity assessment of Plaintiff and Plaintiff's ability to engage in Plaintiff's past relevant work. Plaintiff's Memorandum at 25-27.

**Treating physician rule**

The treating physician rule instructs ALJ's to grant more weight to the opinion of a claimant's treating physician, when the opinion is well-supported by medical findings in the record, and is not otherwise inconsistent with other evidence in the record. 20 C.F.R. § 404.1527(c)(2). Plaintiff contends that the ALJ improperly discounted the opinion of Plaintiff's treating physician, Dr. Huckell, and failed to provide reasoning to support the ALJ's determination. Plaintiff's Memorandum at 26.

Here, the ALJ afforded less weight to the opinion of Dr. Huckell, reasoning that Dr. Huckell's assessment of Plaintiff's disability was put forth only in worker's compensation percentages:

> [t]he determination employed by the Social Security Administration for determining disability is different from that used by state worker's compensation boards. A disability determination under the federal regulations is not based on 'diagnoses' alone or 'percentage' of 'disability', but upon the extent of the physical limitations that the diagnoses may cause.

(R. 31).

Although the ALJ in this case correctly posits that worker's compensation disability standards are not appropriate for disability review purposes (R. 31), that determination does not otherwise excuse the ALJ from providing an explanation for the weight the ALJ assigned to Plaintiff's treating physician, Dr. Huckell, using the criteria established by

the treating physician's rule.  The ALJ in this case should be required to discuss Dr. Huckell's examining and treatment relationship with Plaintiff, the nature and extent of Dr. Huckell's treatment relationship with Plaintiff, the supportability and consistency of Dr. Huckell's opinions with evidence in the record, Dr. Huckell's specialization, and other factors that tend to support or contradict Dr. Huckell's opinion, 20 C.F.R. § 404.1527(d)(2)("§ 404.1527(d)(2)"), although recitation of each and every factor of the rule is not necessary.  *See Henry v. Colvin*, 2016 WL 3208025, at *4 (W.D.N.Y. June 10, 2016) (ALJ not required to explicitly discuss each factor of the treating physician rule as long as reasoning and adherence to the regulation are clear).

In this case, the ALJ "provid[ed] limited weight to the opinion of Dr. Huckell to the extent that such opinion could be construed as total disability under Social Security regulations because such an opinion is not supported by the record."  (R. 31).  Such a conclusory statement does not provide this court, or Plaintiff, with any explanation as to what evidence supports or detracts from Dr. Huckell's medical opinions on Plaintiff's ability to work in violation of the treating physician's rule.  *See Erb v. Colvin,* 2015 WL 5440699, at *12 (W.D.N.Y. Sept. 15, 2015) (reviewing court unable to evaluate the sufficiency of the ALJ's rejection of the treating physician's opinion where the ALJ fails to identify and explain inconsistencies in the record)).

However, as Defendant correctly contends, such error is harmless as Dr. Huckell consistently found Plaintiff capable of performing sedentary work (R. 413, 418, 424, 428, 455, 483, 490).  Defendant's Memorandum at 24.  Plaintiff's motion on this issue should be DENIED.  Plaintiff additionally maintains that the ALJ's failure to properly

assess Plaintiff's credibility resulted in an improper residual functional capacity assessment, and the ALJ's finding on Plaintiff's ability to perform Plaintiff's past relevant work.  Plaintiff's Memorandum at 29-30.

**Credibility**

In this case, the ALJ determined that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the Plaintiff's statements concerning the intensity and persistence alleged by Plaintiff were inconsistent with the ALJ's residual functional capacity assessment and thus not credible.  (R. 29).  In particular, the ALJ determined that Plaintiff's testimony regarding the limiting effects resulting from Plaintiff's back impairment were not credible:

> to the extent that such opinion could be construed as total disability under the Social Security regulations because such an opinion [sic] is not supported by the record . . . agrees that the claimant is limited in many areas identified by her doctor . . . does not find that the claimant is completely precluded from performing work activities of some kind . . [and that although] the claimant testified to severely limited symptoms, the severity of these symptoms is not supported by the medical evidence of the record.

(R. 31).

Plaintiff contends that the ALJ committed legal error in failing to provide an explanation for discrediting Plaintiff's testimony regarding limitations that resulted from the medication that Plaintiff was taking to alleviate Plaintiff's back pain.  Plaintiff's Memorandum at 29.

It is the function of the ALJ, not the court, to assess the credibility of witnesses. *See Tankisi v. Commissioner of Social Security*, 521 Fed. App'x. 29, 35 (2d Cir. 2013). Pain or other symptoms may be important factors contributing to a disability claimant's

functional loss and may affect a claimant's ability to perform basic work activities if
relevant medical signs or laboratory findings show the existence of a medically
determinable impairment that could "reasonably" be expected to cause the associated
pain or other symptoms.  20 C.F.R. § 404.1529(c)(3).  "A claimant's testimony is entitled
to considerable weight when it is consistent with and supported by objective medical
evidence demonstrating that the claimant has a medical impairment which one could
reasonably anticipate would produce such symptoms" *Hall v. Astrue*, 677 F.Supp.2d
617, 630 (W.D.N.Y. 2009) (citing *Latham v. Commissioner of Social Security*, 2009 WL
1605414, at *15 (N.D.N.Y. June 5, 2009)).

In this case, the ALJ "agrees that the claimant is limited in many of the areas
identified by her doctor" and, "[w]hile the claimant testified to severely limiting
symptoms, the severity of these symptoms is not supported by the medical evidence of
the record."  (R. 31).  The ALJ, however, fails to specify what "areas" identified by Dr.
Huckell the ALJ agrees that Plaintiff is limited in, or, what symptoms Plaintiff attributes
to her back impairment are not supported by substantial evidence.  In cases where a
claimant's statements about his or her symptoms are not substantiated by objective
medical evidence, the ALJ must consider the other evidence and make a finding on the
credibility of the individual's statements.  Social Security Ruling ("SSR") 96-7p provides
the ALJ should consider

(i)     The individual's daily activities;
(ii)    The location, duration, frequency, and intensity of the individual's pain or
        other symptoms;
(iii)   Factors that precipitate and aggravate symptoms;
(iv)    The type, dosage, effectiveness, and side effects of any medication the
        individual takes or has taken to alleviate pain or other symptoms;

(v)     Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(vi)    Any measures the individual uses or has used to relieve pain or other symptoms;

(vii)   Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3.

While an ALJ must contain specific reasons for a credibility determination, remand is not appropriate where the court is able to glean the rationale of the ALJ's decision.  *Cichoki v. Astrue*, 534 Fed. Appx. 71, 76 (2d Cir. 2013) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (remand not appropriate where reviewing court is able to understand rationale for ALJ's credibility determination)).  In this case, the ALJ considered Plaintiff's allegations of pain, and compared Plaintiff's statements to the medical evidence in the record.  The undersigned therefore does not disturb the ALJ's credibility assessment of Plaintiff.  Plaintiff's motion on this issue should be DENIED.

## F. Suitable Alternative Employment in the National Economy

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. §§ 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, and the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv), and prove substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience,

and training.  *Parker*, 626 F.2d 225 at 231.  To make such a determination, the

Commissioner must first show that the applicant's impairment or impairments are such

that they nevertheless permit certain basic work activities essential for other

employment opportunities.  *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981).

Specifically, the Commissioner must demonstrate by substantial evidence the

applicant's "residual functional capacity" with regard to the applicant's strength and

"exertional capabilities."  *Id.*  An individual's exertional capability refers to the

performance of "sedentary," "light," "medium," "heavy," and "very heavy" work.  *Decker*,

647 F.2d at 294.  In addition, the Commissioner must establish that the claimant's skills

are transferrable to the new employment if the claimant was employed in a "semi-

skilled" or "skilled" job.[10]  *Id.* at 294.  This element is particularly important in

determining the second prong of the test, whether suitable employment exists in the

national economy.  *Id.* at 296.  Where applicable, the Medical Vocational Guidelines of

---

[10]

 The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled".
*Decker, supra*, at 295.

    "Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be
learned on the job in a short period of time.  The job may or may not require considerable
strength....primary work duties are handling, feeding and offbearing (that is, placing or removing materials
from machines which are automatic or operated by others), or machine tending, and a person can usually
learn to do the job in thirty days, and little specific vocational preparation and judgment are needed.  A
person does not gain work skills by doing unskilled jobs."
20 C.F.R. § 404.1568(a).

    "Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the
more complex work duties.  Semi-skilled jobs may require alertness and close attention to watching
machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding
equipment, property, materials, or persons against loss, damage or injury; or other types of activities
which are similarly less complex than skilled work, but more complex than unskilled work.  A job may be
classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be
moved quickly to do repetitive tasks."
20 C.F.R. § 404.1568(b).

Appendix 2 of Subpart P of the Regulations ("the Grids") may be used to meet the Secretary's burden of proof concerning the availability of alternative employment and supersede the requirement of vocational expert testimony regarding specific jobs a claimant may be able to perform in the regional or national economy.  *Heckler v. Campbell*, 461 U.S. 458, 462 (1983).

In this case, the ALJ properly determined Plaintiff's residual functional capacity, and that Plaintiff was capable of performing sedentary work.  (R. 31).  Any error attributable to the VE's error on this issue is considered harmless, as a significant number of secretarial jobs exist in the regional and national economies.  *See* *http://*www.onetonline.orf/link/summary/43-6014.00, *last visited* July 28, 2016.


## **CONCLUSION**

Based on the foregoing, Plaintiff's motion should be DENIED; Defendant's motion should be GRANTED, and the Clerk of the Court should be instructed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:        August 8, 2016
                   Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    August 8, 2016
            Buffalo, New York